Michael A. KIMBERLING, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 45A03–8612–CR–358.

Court of Appeals of Indiana, Third District.

Aug. 31, 1987.

Order Published Dec. 8, 1987.

Visvaldis P. Kupsis, Schererville, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Michael Kimberling was convicted of check deception, a class A misdemeanor, pursuant to Ind.Code Ann. § 35–43–5–5(a) (Burns Repl.1985). He appeals, challenging the sufficiency of the evidence in two respects, one of which mandates the reversal of his conviction and his discharge: Did the State establish notice was sent to Kimberling informing him the check had been dishonored?

## FACTS

Michael Kimberling operated four gas stations and had a purchasing corporation for these stations known as Southlake Marketing Incorporated, d/b/a Southlake Marketing. City Sales Incorporated is a wholesaler of tobacco, candy, and other related items, and sold merchandise to Southlake Marketing through then-salesman Joseph Kaspar. On January 24, 1985, Kimberling issued a check in the amount of $1,971.00 to pay for goods previously delivered by City Sales. That check, number 1134, was drawn on Southlake Marketing's account with Citizens Federal Savings. Before Kimberling issued the check he phoned the bank to inquire about his balance. He was told his balance at that time was $4,572.97. However, when check number 1134 was presented to Citizens Federal Savings on January 30, 1985, it was returned to City Sales marked "UNCOLL."

Kaspar was assigned the task of collecting on check number 1134 and two other Southlake Marketing checks that had been returned to City Sales. Although he had some difficulty contacting Kimberling, he eventually did so and arranged a payment schedule. Kimberling made good on the other two checks, but 1134 was not paid. Finally, Kaspar advised Kimberling orally if he failed to satisfy his account with City Sales it would seek criminal prosecution.

After Kaspar had given Kimberling this oral advisement, Joseph Sobek, credit manager for City Sales, sent a letter to Southlake Marketing, care of Michael Kimberlyn [sic]. The letter was dated March 19, 1985, and stated:

"Unless full payment of $5633,12 [sic] is received by March 25, 1985, your account will be turned over to the prosecuting attorney for legal action."

Record at 98. Kimberling was subsequently convicted of check deception in connection with check number 1134.

## DISCUSSION

■ Kimberling argues the letter he was sent, quoted in full above, does not fulfill the required statutory notice. He points out the letter does not refer to the check number, to the fact it was dishonored, or to the amount of the check. The State, while conceding notice is an element of the offense which it must prove, argues the letter satisfied the requirement inasmuch as Kimberling had ample actual notice of the check's dishonor.

The check deception statute provides at section (e):

"(e) It is a defense under subsection (a) if a person who:

(1) Has an account with a credit institution but does not have sufficient funds in that account; and

(2) Issues or delivers a check, draft, or order for payment on that credit institution;

pays the payee or holder the amount due, together with protest fees and any service fee or charge, which may not exceed the greater of fifteen dollars ($15) or five percent (5%) (but not more than two hundred fifty dollars ($250)) of the amount due, that may be charged by the payee or holder, within ten (10) days after the date of mailing by the payee or holder of notice to the person that the check, draft, or order has not been paid by the credit institution. Notice sent in the manner set forth in IC 28–2–8–1(c) constitutes notice to the person that the check, draft, or order has not been paid by the credit institution. The payee or holder of a

check, draft, or order that has been dishonored incurs no civil or criminal liability for sending notice under this subsection."

IC 35–43–5–5(e).

■ This court has held the sending of notice of non-payment is an element of the offense which must be proved by the State at trial.

"A construction which includes notice as part of the defense would place control of the availability of the defense in the hands of the payee or holder. The holder or payee could totally deprive a defendant of the defense of payment by intentionally not mailing notice of non-payment and thereby nullifying the legislature's intent that such a defense can and should exist. Thus, the only interpretation that gives viability to the legislature's expressed intent that a defense shall exist is the construction that the defense is timely payment after the state has proven the element of mailing notice of nonpayment."

*Suits v. State* (1983), Ind.App., 451 N.E.2d 375, 381.

Contrary to the State's contention, the statute does not talk in terms of actual notice of dishonor but rather specifically requires the payee or holder of the dishonored check to mail notice to the drawer "that the check has not been paid by the credit institution." IC 35–43–5–5(e). Thus, the question is not whether Kimberling knew the check in question had been dishonored, which he clearly did, but rather, whether the payee mailed him notice of the dishonor. It did not. As noted by Kimberling, the letter he was sent does not refer to the check number, the bank on which it was drawn, to the fact a check was dishonored or to the amount of the check.[1] In fact, the letter is totally devoid of any information reasonably calculated to apprise Kimberling of notice his check number 1134 had been dishonored. Consequently, the State failed to meet its burden of proof on this element of the offense of check deception.

Judgment reversed and cause remanded for the entry of a judgment of acquittal.

HOFFMAN, J., concurs.

STATON, J., dissents, with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion for the following reasons:

1) The Majority has re-written the statute and invaded the legislature's right to define societial conduct which constitutes a crime.

2) The Indiana Legislature made notice and payment a defense—not an element of check deception.

3) Assuming *arguendo* that the Majority is correct in its rationale that notice is an element of the offense of check deception and not a defense as urged by the Indiana Legislature, Kimberling had actual notice and statutory notice. The statute only defines one type of notice that will constitute notice. Other types of notice are not excluded by the statute.

4) After agreeing with Mr. Kaspar that he would adhere to a payment schedule to repay check number 1134 and after receiving a bank statement showing that check 1134 had been returned for insufficient funds, and after being personally threatened that action would be taken against him if he did not make check 1134 good as he had promised, it is difficult for me to conclude that Kimberling did not have notice that his check had been returned for insufficient funds. If a precise statement in a letter as to the amount and check number is necessary before check deception can be prosecuted then for all practical purposes, Indiana does not have a check deception statute.

---

**1.** The $5633.12 amount in the letter necessarily included amounts owed on an open account inasmuch as the three checks which were returned, two of which were paid, do not total that amount.

In 1981, this Court treated the "notice" provision of the statute as an element of the check deception offense in *Vargo v. State* (1981), 429 N.E.2d 291. The Statute, IC 35-43-5-5 then read as follows:

(a) A person who:

(1) Has an account with a credit institution but does not have sufficient funds in that account; and

(2) Issues or delivers a check, draft, or order for payment on that credit institution; *does not commit a crime* under subsection (a) of this section *if he pays the payee or holder the amount due, together with protest fees and any service fee or charge, not exceeding ten dollars [$10] which may be charged by the payee or holder, within twenty [20] days after the date of mailing by the payee or holder of notice to the person that the check, draft, or order has not been paid by the credit institution. Notice sent to either (i) the address printed or written on the check, draft, or order (ii) the address given by the person in writing to the payee at the time the check, draft, or order was issued constitutes notice to the person that the check, draft, or order has not been paid by the credit institution....* (emphasis supplied).

After *Vargo v. State*, the Indiana Legislature amended the Statute so that there could be no mistake that notice and payment was a defense and not an element of the offense of check deception. The Statute was amended to read as follows:

(e) *It is a defense* under subsection (a) *if a person* who: (1) Has an account with a credit institution but does not have sufficient funds in that account; and

(2) Issues or delivers a check, draft, or order for payment on that credit institution;

*pays the payee or holder the amount due, together with protest fees and any service fee or charge, which may not exceed the greater of fifteen dollars [$15.00] or five percent [5%] but not more than two hundred fifty dollars [$250] of the amount due, that may be charged by the payee or holder, within*

*ten [10] days after the date of mailing by the payee or holder of notice to the person that the check, draft, or order has not been paid by the credit institution. Notice sent in the manner set forth in IC 28-2-8-1(c) constitutes notice to the person that the check, draft, or order has not been paid by the credit institution.* The payee or holder of a check draft or order that has been dishonored incurs no civil or criminal liability for sending notice under this subsection.

The Majority Opinion cites *Suits v. State* (1983), Ind.App., 451 N.E.2d 375 as authority for its interpretation of the Statute. It reads into the Statute an intent that obviously was never meant to exist. Actually, when the previous version of the Statute is read in conjunction with the amended version, it is equally obvious that just the opposite intent was meant; otherwise, there would have been little need to amend the Statute. In *Suits*, the Majority quoted this phrase: "Thus, the only interpretation that gives viability to the legislature's expressed intent that a defense shall exist is the construction that the defense is timely payment after the state has proven the element of mailing notice of nonpayment." 451 N.E.2d at 381. This interpretation makes no sense in light of the amended Statute. Too, this interpretation stands for the proposition that intent can only be determined after a notice is sent to the payor by the payee. However, the Statute provides:

(c) The fact that a person issued or delivered a check, draft, or order, payment of which was refused by the drawee, constitutes prima facie evidence that the person knew that it would not be paid or honored. In addition, evidence that a person had insufficient funds in or no account with a drawee credit institution constitutes prima facie evidence that he knew that the check, draft, or order would not be paid or honored.

If the Majority's interpretation is adopted, no person could be prosecuted under the Statute who had not received a notice from the payee. This is clearly not

the intent of the Indiana Legislature. Its intent is that a defense to the charge of check deception is available when the payor makes the check good within ten days after receiving notice from the payee that his check was not honored. If he pays after the ten days has expired, the defense is not available. If he does not pay at all the defense is not available. In Kimberling's case, there was absolutely no payment. If the State must prove that notice was mailed with a precise statement of the check number and the the amount of the check as an element of the offense, the intent of the Legislature to punish those persons who pass bad checks would be effectively frustrated. If the defense is available only for ten days after the notice is mailed, its availability to a defendant only comes before the Court when two events occur. First, a notice must be sent to the payor by the payee, and second, the payor must have made the check good within ten days from the mailing of the notice; otherwise, notice has no place in the prosecution of a check deception offense.

It is true that the availability of the defense depends upon the payee notifying the payor that his check has been returned for insufficient funds. In most instances, the payee will want his money and notify the payor. The facts in the Kimberling case demonstrate this high probability. Kimberling was notified by letter, in person, his bank statement, a payee's payment schedule, and a threat of legal action. The Majority's concern that the notice defense is in the control of the payee must be left to the Indiana Legislature to change. Notice can not be an element of the check deception offense under the Statute. I would affirm the conviction.